IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BILLY TYLER, | ) | 4:10CV3087 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBB JACKSON, in his individual | ) | |
| capacity only, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 19.)  As set forth below, Defendant's Motion is granted and this matter is dismissed.

## *BACKGROUND*

Plaintiff Billy Roy Tyler ("Tyler") filed his Complaint in this matter on May 10, 2010, against Robb Jackson ("Jackson"), Hayes, and John Doe ("Doe"). (Filing No. 1.)  On June 23, 2010, the court performed a detailed initial review of the Complaint and dismissed Tyler's official capacity claims against Jackson, Tyler's Fourth Amendment Claim against Jackson in his individual capacity and Tyler's claims against Doe and Hayes. (Filing No. 6.)  However, the court permitted Tyler's Fourteenth Amendment claim to proceed against Jackson in his individual capacity only. (*Id.*)

Liberally construed, Tyler alleges that Jackson racially profiled a group speeding cars and pulled over the car that Tyler was traveling in because the occupants were black. (Filing No. 1 at CM/ECF p. 2.)  Jackson filed his Motion for Summary Judgment on January 10, 2011. (Filing No. 19.)  In support of his Motion, Jackson filed a Brief and an Index of Evidence. (Filing Nos. 20 and 21.)  Tyler filed an Affidavit in Opposition.  (Filing No. 22.)

The party seeking entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1).  Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition.  Id.  "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." Id.; see also Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Jackson submitted a statement of material facts and a properly-authenticated Index of Evidence in accordance with the court's Local Rules.  (Filing No. 21.) Tyler submitted an Affidavit in Opposition.  (Filing No. 22.)  In his Affidavit, Tyler does not controvert any of Jackson's facts, but instead argues that these facts establish that Jackson violated his rights.  (Id.)  In light of this, the court adopts the following undisputed material facts.

### RELEVANT UNDISPUTED FACTS

1.      Tyler is African-American.

2.      Jackson is a Nebraska State Trooper assigned to Troop E headquartered in Scottsbluff, Nebraska.

3.      On March 31, 2009, Plaintiff was traveling as a passenger in a vehicle heading east in the eastbound lanes of Interstate 80 in Deuel County, Nebraska.

4.      On that same day, Jackson was in his State Patrol car with his canine assistant traveling west in the westbound lanes of Interstate 80 in Deuel County, Nebraska.

5.      At 12:57 a.m. Jackson observed a vehicle in the east-bound lane traveling faster than the other cars.  Through the use of radar, Jackson determined that the vehicle was traveling at 90 miles per hour.

6.      Jackson did not observe the race or sex of the occupants of the vehicle.

7.      Jackson crossed the interstate and stopped the vehicle in question.

8.      A Deuel County Sheriff's deputy and an additional Nebraska State Patrol Trooper arrived to assist Jackson.

9.      Jackson determined that the driver of the vehicle, Bobbie Barfield ("Barfield"), was driving with a suspended licence.  Barfield also acknowledged that he was not the owner of the vehicle.

10.      Jackson questioned both Barfield and Tyler about vehicle ownership and the purpose of their trip.  Barfield and Tyler provided different answers.

11.      Barfield was ticketed for speeding and for driving on a suspended license.  He was then arrested on the suspended license charge.

12.      Jackson conducted an electronic search to determine if Tyler had any outstanding warrants.  This search revealed that Tyler had a criminal history with a number of felony drug convictions.

3

13.     Jackson informed Tyler that Barfield was being arrested for driving with a suspended license, asked Tyler to exit the vehicle and told him that he would be pat searched for weapons.

14.     The law enforcement officers who had joined Jackson pat searched Tyler for weapons and Jackson used his canine assistant to search the vehicle.

15.     After the search, Tyler was allowed to take control of the vehicle.  Tyler followed law enforcement vehicles carrying Barfield to the Deuel County Sheriff's office in Big Springs, Nebraska.

16.     Barfield posted bond and left Big Springs with Tyler driving the vehicle in question.

(Filing Nos. 1, 20 and 21.)

## *ANALYSIS*

## I.     **Summary Judgment Standard**

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue.  *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

4

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II.   Qualified Immunity

Jackson argues that he is entitled to qualified immunity because Tyler has not shown that he violated any of Tyler's constitutional rights. (Filing No. 19 at CM/ECF pp. 5-15.)  The court agrees.

### 1.   Legal Standards

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted).  Moreover,

qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

### 2.     *Deprivation of a Constitutional Right*

As discussed above, Tyler alleges that Jackson violated his Fourteenth Amendment rights because Jackson racially profiled a group of speeding cars and pulled over the car that Tyler was traveling in because the occupants were black. (Filing No. 1 at CM/ECF p. 2.) As the court stated in it's initial review, it is well established that officers may not selectively enforce laws on account of a person's race. *Whren*, 517 U.S. at 813. The constitutional basis to challenge the selective enforcement of the laws is the Equal Protection Clause. *Id.* However, to establish an equal protection claim a plaintiff must allege both discriminatory effect and discriminatory purpose. *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003). "When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Johnson,* 326 F.3d at 1000; *see also Chavez v. Ill. State Police*, 251 F.3d 612, 634-48 (7th Cir. 2001); *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

Here, Jackson stopped the vehicle that Tyler was traveling in at 12:57 a.m. on Interstate 80 in Deuel County, Nebraska.  (Filing No. 1 at CM/ECF pp. 1-3; Filing No. 21-1, Attach.1 at CM/ECF pp. 1-2.)  Jackson stopped the vehicle after he used radar to determine that it was traveling at 90 miles per hour, or 15 miles per hour faster than the interstate speed limit.  (Filing No. 21-1, Attach.1 at CM/ECF pp. 1-2.) *See also* Neb. Rev. Stat. § 60-6,186(1)(h) (setting the interstate speed limit at seventy-five miles per hour).  Jackson did not observe the race or sex of the vehicle occupants before he stopped the vehicle.  (Filing No. 21-1, Attach.1 at CM/ECF pp. 1-2.)  Tyler does not oppose these facts.  (Filing No. 22.)

Viewing the facts in a light most favorable to Tyler, the court concludes that Tyler has failed to demonstrate the discriminatory effect and discriminatory purpose necessary to prove Jackson deprived him of his Fourteenth Amendment rights. Accordingly, Jackson is entitled to qualified immunity and Tyler's Fourteenth Amendment claims are dismissed with prejudice.[1]

---

[1]The court notes that Tyler raises new allegations in his Affidavit.  (Filing No. 22 at CM/ECF p. 2.)  Specifically, Tyler asserts that Jackson inappropriately used his past criminal history to violate his Fourth Amendment rights.  (*Id*.)  As discussed above, the court dismissed Tyler's Fourth Amendment claims on initial review. (Filing No. 6.)  Moreover, even if the court were to reconsider this dismissal in light of Tyler's new allegations, his Fourth Amendment claims still fail.  "If an officer develops reasonable suspicion regarding unrelated criminal conduct during the course of a lawful traffic stop, 'an officer may broaden his inquiry and satisfy those suspicions' without running afoul of the Fourth Amendment. *United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008)* (quotation omitted).  "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002) (quotation omitted).  Here, Barfield was speeding and driving on a suspended license.  Barfield and Tyler both provided different information regarding the purpose of their trip and the ownership of the vehicle.  And, an electronic search revealed that Tyler had a number of felony drug convictions.  Based on the totality of the circumstances, the court finds that Jackson had  reasonable suspicion to expand the scope of the traffic stop and use his canine assistant to search the vehicle.

IT IS THEREFORE ORDERED that:

1.     Jackson's Motion for Summary Judgment (filing no. 19) is granted and Tyler's Fourteenth Amendment claims against Jackson are dismissed with prejudice.

2.     A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 8ᵗʰ day of April, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.